UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD DUANE BROOKS,

   Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,
             /

Case No.  1:15-CV-0497

HON. PAUL L. MALONEY

**OPINION**

   This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Richard Brooks seeks review of the Commissioner's decision denying his claim for supplemental security income under Title XVI of the Social Security Act.

**STANDARD OF REVIEW**

   The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 50 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.48, 112.) He completed the twelfth grade and was previously employed as a septic tank servicer. (PageID.77, 83.) Plaintiff applied for benefits on November 30, 2012, alleging that he had been disabled since July 5, 2011, due to a heart attack and back problems. (PageID.112.) Plaintiff's application was denied on January 25, 2013, after which time he requested a hearing before an ALJ. (PageID.121–26.)

On November 5, 2013, Plaintiff appeared with his counsel before ALJ Mario Silva for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.64–88.) In a written decision dated December 17, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.48–63.) On March 17, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.20–23.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g), proceeding pro se.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Silva determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2012, the application date. (PageID.53.) At step two, the ALJ determined Plaintiff had the following severe impairments: "coronary artery disease with shortness of breath, lumbar degenerative disc disease, meralgia paresthetica, and voice dysfunction." (PageID.53.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.54.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform less than light work as defined in 20 CFR 416.967(b). Specifically, the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch, but never crawl. The claimant must be allowed to work at a flexible pace and his work must not involve tandem tasks or teamwork, where one production step is dependent upon another step. The claimant's work must not require interacting with others using a telephone.

(PageID.54–55.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (PageID.58.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 12,265 jobs within the state of Michigan in the positions of router, routing clerk, and price marker that an individual similar to Plaintiff could perform. (PageID.85.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from November 30, 2012, through December 17, 2013. (PageID.59.)

## DISCUSSION

Plaintiff's pro se brief is a page and a half in length and fails to identify any alleged error supporting relief in this matter. Instead, Plaintiff appears to request an oral argument to ascertain why his claim was denied. (PageID.501–02.) After reviewing Plaintiff's brief, the Court concludes that it will not benefit from oral argument in this case. The role of the court at this stage is a limited one. On appellate review, "[t]his court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). It is for the ALJ, not a reviewing court, to explain why a claimant may or may not be entitled to benefits. The role of this Court is to examine the ALJ's decision and determine whether substantial evidence supports that

5

decision. *Brainard*, 889 F.2d at 681. Given that backdrop, on July 22, 2015, the Court set a briefing schedule for the parties in this case. Plaintiff was requested to file an initial brief that contained "a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand." (PageID.489.) Plaintiff has not done so here and, as noted, his short brief fails to identify any cognizable claim for relief. Nevertheless, given Plaintiff's pro se status, the Court has interpreted Plaintiff's brief indulgently which leads the Court to conclude that Plaintiff has asserted the following two claims.

1. The ALJ's RFC determination is unsupported by substantial evidence due to Plaintiff's heart condition; and

2. Plaintiff's condition worsened subsequent to the ALJ's decision such that he is unable to work.

The Court will address the issues below.

**1.**

Plaintiff alleges that, due to his heart condition, he is much more limited than that found by the ALJ. His brief states he cannot do anything that takes longer than half an hour due to his cardiovascular disease. He can only sit down in a chair for an hour before he must get up and move around. (PageID.501.) RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 416.945(a)(1); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x at 429. The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found that Plaintiff retained the RFC for a limited range of light work. (PageID.54–55.) The ALJ carefully considered the evidence related to both Plaintiff's

severe and non-severe impairments–including his heart condition. (PageID.55–58). Plaintiff has not shown that the restrictions the ALJ included in his factual finding regarding Plaintiff's RFC, such as limiting him to flexible pace work, and lifting and carrying twenty pounds occasionally, failed to adequately take into account Plaintiff's functional limitations stemming from the aforementioned impairments.

The ALJ determined Plaintiff's cardiovascular problems were not disabling, either on their own or in combination with his other impairments. (PageID.56.) The ALJ cited to objective test results in support of this conclusion. The ALJ's decision is well supported. The record shows that on July 5, 2011, Plaintiff went to the hospital complaining of chest pain. An angiography was performed and his right coronary artery was determined to be 100% blocked. (PageID.229.) Plaintiff underwent several procedures including a fluoroscopy, left heart catheterization, a thrombectomy, and insertion of three stents and a temporary pacemaker. (PageID.229, 238.) Plaintiff was discharged on July 7 without complaint. A post operative echocardiogram revealed an ejection fraction in the range of 50-55%.[2] He denied chest pain and shortness of breath, and was told to follow up with Great Lakes Heart and Vascular later that month. (PageID.229 ) Dr. Thomas Pow of Great Lakes Heart found no EKG changes suggestive of ischemia nor scintigraphic evidence of myocardial ischemia. Plaintiff had a moderate fixed inferior defect, but an ejection fraction of 62%. (PageID.365.) A treatment note a month later found no chest pain or shortness of breath. (PageID.345.) Two months after his heart attack, Plaintiff resumed his part time work working on trees. (PageID.322.)

On February 1, 2012, Plaintiff was seen by Dr. William Wilkinson. Plaintiff described his

---

[2]This is considered a borderline fraction. An ejection fraction above 55% is considered normal. *Ejection Fraction: What Does It Measure?* MAYO CLINIC, http://www.mayoclinic.org/ejection-fraction/expert-answers/FAQ-20058286 (last visited Apr. 13, 2016).

7

chest pain as rare and mild. (PageID.314.) His respiratory effort was normal. (PageID.316.) A treatment note later that month stated that there was no angina. (PageID.343.) On April 4, 2012, he had normal left ventricular function with an ejection fraction of 60%. (PageID.337.) While Plaintiff continued to complain of chest pain and shortness of breath, evaluations continued to be normal, with normal ejection fractions. It appears, however, Plaintiff had a second heart attack on October 2, 2013, and Plaintiff underwent a heart catheterization at Lakeland HealthCare. (PageID.466.) Plaintiff was diagnosed with atherosclerotic heart disease, and Plaintiff was advised he needed to control his blood pressure. (PageID.468.) But Plaintiff was described as in no acute distress. (PageID.471, 475.) Plaintiff had an ejection fraction of 61% on October 15, 2013. (PageID.422.) Despite being prescribed nitroglycerin for his shortness of breath, he did not take it. (PageID.422.) The Court does not doubt Plaintiff is not in perfect health, but that is not what is required in order to be found not disabled under Social Security regulations. The ALJ determined Plaintiff's heart condition did not limit him beyond that found in the RFC. The Court finds that determination is supported by substantial evidence.

Plaintiff further incorrectly alleges that the VE testified there were no jobs Plaintiff could perform. As noted above, in response to the ALJ's hypothetical the VE identified over 12,000 positions in the state of Michigan as jobs that Plaintiff could perform. (PageID.84–85.) Plaintiff is misconstruing the VE's response to an alternative hypothetical posed by his attorney that incorporated his subjective allegations–namely that he needed to elevate his legs to waist level while seated. In response to that hypothetical, the VE testified there would be no jobs available. (PageID.86.) The ALJ, however, found that Plaintiff's testimony was not fully credible. (PageID.57.) It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987

F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The ALJ's hypothetical question included all the limitations he found to be credible. Plaintiff's first claim of error is thus rejected.

**2.**

Plaintiff finally states "now my elbows and hand have been giving me problems. I have a hard time writing without being in pain, I have [numbness] in my legs and a hard time doing anything without losing my breath, so I can't do much anymore." (PageID.502.) The record also contains two sets of treatment notes that were not presented to the ALJ–some of which postdate the ALJ's decision, though Plaintiff does not argue for a sentence six remand for further consideration of this information. (PageID.24–46, 91–110.) While the record contains treatment notes regarding Plaintiff's numbness and shortness of breath, there does not appear to be any mention of problems with Plaintiff's elbows and hands, and Plaintiff did not allege in his application that these were disabling conditions. (PageID.112.) To the extent Plaintiff argues he is now unable to work because of impairments with his elbows and hands, the appropriate remedy is with the filing of an additional application. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 712 (6th Cir.1988). ("If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment.").

The ALJ considered Plaintiff's complaints of shortness of breath and numbness in his legs in the decision. In fact, the ALJ included Plaintiff's leg numbness as a severe impairment at step 2, and

9

noted Plaintiff had been diagnosed with meralgia paresthetica.[3] (PageID.53, 55.) The ALJ determined, however, that such did not limit Plaintiff beyond that found in the RFC, noting for example, that the record did not show Plaintiff was unstable, nor did pain radiate to his legs or did he experience incontinence. (PageID.55.) Plaintiff here is asking the Court to re-weigh the evidence, but as noted above, such is beyond the role of this Court. While Plaintiff did not ask for a sentence six remand to consider the additional evidence, the Court notes that even if he had, it would have failed. Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). Plaintiff cannot show the new evidence was material.

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Plaintiff cannot do that here. On August 6, 2014, Plaintiff had no chest pain with exertion, even though he was not taking his medications. (PageID.30.) A November 21, 2014, treatment note found Plaintiff had a normal respiratory effort. (PageID.27.) Such does not show that had the evidence been considered by the ALJ, he would have reached a different conclusion. Additionally, the additional evidence also does not show Plaintiff's leg numbness impaired him beyond that found in the RFC. An April 25, 2013 treatment

---

[3] "Meralgia paresthetica is a condition characterized by tingling, numbness and burning pain in your outer thigh." *Meralgia Paresthetica*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/definition/con-20030852, (last visited Apr. 13, 2016).

note stated that the numbness was not dangerous, and was due to an irritated nerve. (PageID.9 Again, the ALJ found that Plaintiff's numbness in his legs constituted a severe impairment, and determined that such did not impair him beyond that in the RFC, and the Court finds that the ALJ's decision is supported by substantial evidence. If Plaintiff believes his condition has worsened, the appropriate avenue is the filing of a new application.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:  August 30, 2016                              /s/ Paul L. Maloney
                                                     PAUL L. MALONEY
                                                     United States District Judge